# U.S. Bankruptcy Court

## Eastern District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 10/31/2023 at 4:32 PM EST

[File another claim](#)

| | |
|---|---|
| **Case Name:** | Erica M Ruiz |
| **Case Number:** | [23-12650-pmm](#) |
| **Creditor Name:** | MidFirst Bank |
| | 999 NorthWest Grand Boulevard |
| | Oklahoma City, OK 73118 |
| **Claim Number:** | [4](#)   [Claims Register](#) |

**Amount Claimed:** $271,887.99
**Amount Secured:** $271887.99
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** POC- Ruiz- Client Executed.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/31/2023] [FileNumber=31625195
-0] [8a33253e5d886fbca90858eca7fcd3f3d8127fed2475a40532d17f3699575882b
7a4fb302665a3c85e68485697ee3132d102ab9e6c702b02fb0047e07c37989a]]
**Document description:** Exhibit
**Original filename:** C:\fakepath\COS- Ruiz.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/31/2023] [FileNumber=31625195
-1] [a1f165363ff732fbf474dbc45a65b2e7b7fa0fe00608adbbcf8f8367554753935
fae5bfcd767fc4c9c83bd3a915be3a220030c31d928289bbd64f741e2fb411f]]
**Document description:** Exhibit 410a Payment History
**Original filename:** C:\fakepath\410a- Ruiz.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/31/2023] [FileNumber=31625195
-2] [5e739e1c8887729493e688a557ad5de9cc7cad69666a8abc281a0cc500a6c9d07
fa4515651f18eff22cdf12a3270139fb007a0dc7dbfae9180b8ced0b5a4469e]]
**Document description:** Exhibit Escrow Analysis

**Original filename:**C:\fakepath\EA- Ruiz.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/31/2023] [FileNumber=31625195
-3] [99289d47db15283f85968c8df5de3d63fbc550611e1ff6de2d7b43eccaba84065
7acde1c3f273add23a0ad8d51b90d2e7b3ebbb5a859ee63976781b05523e86c]]
**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Loan Documents- Ruiz- Redacted.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/31/2023] [FileNumber=31625195
-4] [7ea80e59296f63cc8f5e952169216e35570557f48e519a9872a78e3c0e9cf1fb4
54d482590112b3ec9d7943802337e95a57c43b008b968224f5a8465b56267c4]]

**23-12650-pmm Notice will be electronically mailed to:**

MICHAEL PATRICK FARRINGTON on behalf of Creditor MIDFIRST BANK
mfarrington@kmllawgroup.com

JOHN M. KENNEY on behalf of Debtor Erica M Ruiz
jken330@comcast.net, Kathy@jkenneylaw.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

KENNETH E. WEST on behalf of Trustee KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

**23-12650-pmm Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1    Erica M Ruiz
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number  23-12650 PMM

---

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

### Part 1:    Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | **MIDFIRST BANK** <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☐ No <br> ☒ Yes. From whom? ____ Nationstar Mortgage LLC _____ |

| **3. Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent? (if different)** |
|---|---|---|
| | **MidFirst Bank** <br> Name | Name |
| | **999 NorthWest Grand Boulevard** <br> Number        Street | Number        Street |
| | **Oklahoma City, OK 73118** <br> City        State        Zip Code | City        State        Zip Code |
| | **1-800-654-4566** <br> Contact phone | Contact phone |
| | Contact Email | Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ | |

| **4. Does this claim amend one already filed?** | ☒ No <br> ☐ Yes. Claim number on court claims registry (if known)_____        Filed on _____ <br> MM / DD / YYYY |
|---|---|

| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No <br> ☐ Yes. Who made the earlier filing? _____ |
|---|---|

---

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor     **8254** |

7. **How much is this claim?** $271,887.99

**Does this amount include interest or other charges?**

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.
     Nature of property: **512 Jefferson Avenue Bristol, PA 19007**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:   **Deed of Trust, Mortgage, Note**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                         $_____

Amount of the claim that is secured:   **$271,887.99**

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $**72,177.67**

Annual Interest Rate (when case was filed) **5.3750%**

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.        $_____

11. **Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

242

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
|---|---|---|
| | ☐ **Yes.** *Check all that apply:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(  ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☒  I am the creditor.
☐  I am the creditor's attorney or authorized agent.
☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  10/30/2023
               MM / DD / YYYY

_Leah Pattison_ (signature)
               Signature

Print the name of the person who is completing and signing this claim:

Name        Leah Pattison
            First name        Middle name        Last name

Title       Vice President

Company     MidFirst Bank
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     999 NW Grand Blvd
            Number    Street
            Oklahoma City, OK  73118
            City                State    ZIP Code

Contact     _____        Email _____
phone

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Erica M Ruiz | CHAPTER 13 |
| Debtor(s) | NO. 23-12650 PMM |

### CERTIFICATE OF SERVICE

I, the undersigned, attorney for MIDFIRST BANK do hereby certify that true and correct copies of
the foregoing Proof of Claim have been served <u>October 31, 2023</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
JOHN M. KENNEY
John M. Kenney P.C.
308 North Oxford Valley Road
Fairless Hills, PA 1903

**Bankruptcy Trustee**
Kenneth E. West
Office of the Chapter 13 Standing Trustee (VIA ECF)
1234 Market Street - Suite 1813
Philadelphia, PA 19107

Date: <u>October 31, 2023</u>

<u>**/s/ Brian C. Nicholas**</u>
Brian C. Nicholas
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-5366
bnicholas@kmllawgroup.com

| | Part 1: Mortgage and Case Information | | | Part 2: Total Debt Calculation | | | Part 3: Arrearage as of Date of the Petition | | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Case Number | 23-12650 | | Principal Balance: | | 211,006.36 | Principal & Interest Due: | | 47,067.93 | Principal & Interest: | | 1,206.87 |
| Debtor 1 | ERICA M RUIZ | | Interest Due: | | 37,038.89 | Prepetition Fees Due: | | 7,767.08 | Monthly Escrow: | | 342.10 |
| Debtor 2 | | | Fees, Costs Due: | | 7,767.08 | Escrow Deficiency for Funds | | | Private Mortgage Insurance: | | 139.89 |
| Last 4 Digits to Identify | xxxx8254 | | | | | Advanced: | | 17,503.98 | | | |
| Creditor | MidFirst Bank | | Escrow Deficiency for Funds Advanced: | | 17,503.98 | Projected Escrow Shortage: | | 1,267.00 | Total Monthly Payment: | | 1,688.86 |
| Servicer | MidFirst Bank | | Less Total Funds On Hand: | | 1,428.32 | Less Funds On Hand: | | 1,428.32 | | | |
| Fixed Accrual/Daily | | | Deferred Balance: | | 0.00 | | | | Next Due Date: | | 10/1/2023 |
| Simple Interest/Other | Fixed | | Total Debt: | | 271,887.99 | Total Prepetition Arrearage: | | 72,177.67 | | | |

**Part 5: Loan Payment History from First Date of Default**

| | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Account Activity | | | | | | | | | | |
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
| 3/1/2019 | 1675.18 | | | Contractual Payment Due | 3/1/2019 | 1675.18 | | | | | | 215038.90 | | 1470.62 | 0.00 | 0.00 |
| 3/13/2019 | | | | Payments Posting | *3/01/2019 | 0.00 | 243.67 | 963.20 | 468.31 | | | 214795.23 | | 1938.93 | 0.00 | 0.00 |
| 3/28/2019 | | | | MIP Paid | | 0.00 | | | -149.10 | | | 214795.23 | | 1789.83 | 0.00 | 0.00 |
| 4/1/2019 | 1675.18 | | | Contractual Payment Due | 4/1/2019 | 1675.18 | | | | | | 214795.23 | | 1789.83 | 0.00 | 0.00 |
| 4/12/2019 | | | | Payments Posting | *4/01/2019 | 0.00 | 244.77 | 962.10 | 468.31 | | | 214550.46 | | 2258.14 | 0.00 | 0.00 |
| 4/15/2019 | | | | Taxes Paid | | 0.00 | | | -1,266.49 | | | 214550.46 | | 991.65 | 0.00 | 0.00 |
| 4/26/2019 | | | | MIP Paid | | 0.00 | | | -149.10 | | | 214550.46 | | 842.55 | 0.00 | 0.00 |
| 4/29/2019 | | | | Payments Posting | *5/01/2019 | -1675.18 | 245.86 | 961.01 | 468.31 | | | 214304.60 | | 1310.86 | 0.00 | 0.00 |
| 5/1/2019 | 1675.18 | | | Contractual Payment Due | 5/1/2019 | 0.00 | | | | | | 214304.60 | | 1310.86 | 0.00 | 0.00 |
| 5/29/2019 | | | | MIP Paid | | 0.00 | | | -149.10 | | | 214304.60 | | 1161.76 | 0.00 | 0.00 |
| 6/1/2019 | 1675.18 | | | Contractual Payment Due | 6/1/2019 | 1675.18 | | | | | | 214304.60 | | 1161.76 | 0.00 | 0.00 |
| 6/17/2019 | | | 48.27 | Late Fees | | 1675.18 | | | | 48.27 | | 214304.60 | | 1161.76 | 48.27 | 0.00 |
| 6/27/2019 | | | | Payments Posting | *6/01/2019 | 0.00 | 246.96 | 959.91 | 468.31 | | | 214057.64 | | 1630.07 | 48.27 | 0.00 |
| 6/27/2019 | | | | MIP Paid | | 0.00 | | | -149.10 | | | 214057.64 | | 1480.97 | 48.27 | 0.00 |
| 6/27/2019 | | | -48.27 | Late Fees | | 0.00 | | | | -48.27 | | 214057.64 | | 1480.97 | 0.00 | 0.00 |
| 7/1/2019 | 1675.18 | | | Contractual Payment Due | 7/1/2019 | 1675.18 | | | | | | 214057.64 | | 1480.97 | 0.00 | 0.00 |
| 7/16/2019 | | | 48.27 | Late Fees | | 1675.18 | | | | 48.27 | | 214057.64 | | 1480.97 | 48.27 | 0.00 |
| 7/30/2019 | | | | MIP Paid | | 1675.18 | | | -149.10 | | | 214057.64 | | 1331.87 | 48.27 | 0.00 |
| 8/1/2019 | 1675.18 | | | Contractual Payment Due | 8/1/2019 | 3350.36 | | | | | | 214057.64 | | 1331.87 | 48.27 | 0.00 |
| 8/13/2019 | | 800.00 | | Suspense Transaction | | 3350.36 | | | | | 800.00 | 214057.64 | | 1331.87 | 48.27 | 800.00 |
| 8/16/2019 | | | 48.27 | Late Fees | | 3350.36 | | | | 48.27 | | 214057.64 | | 1331.87 | 96.54 | 800.00 |
| 8/28/2019 | | | | MIP Paid | | 3350.36 | | | -149.10 | | | 214057.64 | | 1182.77 | 96.54 | 800.00 |
| 9/1/2019 | 1675.18 | | | Contractual Payment Due | 9/1/2019 | 5025.54 | | | | | | 214057.64 | | 1182.77 | 96.54 | 800.00 |
| 9/3/2019 | | | 20.00 | Billed - Inspection Fee | | 5025.54 | | | | 20.00 | | 214057.64 | | 1182.77 | 116.54 | 800.00 |
| 9/16/2019 | | | | Taxes Paid | | 5025.54 | | | -1,629.94 | | | 214057.64 | | -447.17 | 116.54 | 800.00 |
| 9/16/2019 | | | 48.27 | Late Fees | | 5025.54 | | | | 48.27 | | 214057.64 | | -447.17 | 164.81 | 800.00 |
| 9/19/2019 | | 2162.00 | | Suspense Transaction | | 5025.54 | | | | | 2162.00 | 214057.64 | | -447.17 | 164.81 | 2962.00 |
| 9/19/2019 | | | | Payments Posting | *7/01/2019 | 3350.36 | 248.07 | 958.80 | 468.31 | | -1675.18 | 213809.57 | | 21.14 | 164.81 | 1286.82 |
| 9/27/2019 | | | | MIP Paid | | 3350.36 | | | -149.10 | | | 213809.57 | | -127.96 | 164.81 | 1286.82 |
| 10/1/2019 | 1675.18 | | | Contractual Payment Due | 10/1/2019 | 5025.54 | | | | | | 213809.57 | | -127.96 | 164.81 | 1286.82 |
| 10/3/2019 | | 407.36 | | Suspense Transaction | | 5025.54 | | | | | 407.36 | 213809.57 | | -127.96 | 164.81 | 1694.18 |
| 10/9/2019 | | | | Payments Posting | *8/01/2019 | 3350.36 | 249.18 | 957.69 | 468.31 | | -1675.18 | 213560.39 | | 340.35 | 164.81 | 19.00 |
| 10/9/2019 | | | 19.00 | Billed - E Pay Fee | | 3350.36 | | | | 19.00 | | 213560.39 | | 340.35 | 183.81 | 19.00 |
| 10/9/2019 | | | -19.00 | Paid - E Pay Fee | | 3350.36 | | | | -19.00 | | 213560.39 | | 340.35 | 164.81 | 0.00 |
| 10/16/2019 | | | 48.27 | Late Fees | | 3350.36 | | | | 48.27 | | 213560.39 | | 340.35 | 213.08 | 0.00 |
| 10/24/2019 | | | 20.00 | Billed - Inspection Fee | | 3350.36 | | | | 20.00 | | 213560.39 | | 340.35 | 233.08 | 0.00 |
| 10/28/2019 | | | | Insurance Paid | | 3350.36 | | | -894.00 | | | 213560.39 | | -553.65 | 233.08 | 0.00 |
| 10/30/2019 | | | | MIP Paid | | 3350.36 | | | -149.10 | | | 213560.39 | | -702.75 | 233.08 | 0.00 |
| 11/1/2019 | 1675.18 | | | Contractual Payment Due | 11/1/2019 | 5025.54 | | | | | | 213560.39 | | -702.75 | 233.08 | 0.00 |
| 11/1/2019 | | 1900.00 | | Payments Posting | *9/01/2019 | 3350.36 | 250.30 | 956.57 | 468.31 | | | 213310.09 | | -234.44 | 233.08 | 0.00 |
| 11/1/2019 | | | | Suspense Transaction | | 3350.36 | | | | | 224.82 | 213310.09 | | -234.44 | 233.08 | 224.82 |
| 11/18/2019 | | 1450.36 | | Suspense Transaction | | 3350.36 | | | | | 1450.36 | 213310.09 | | -234.44 | 233.08 | 1675.18 |
| 11/18/2019 | | | | Payments Posting | *10/01/2019 | 1675.18 | 251.42 | 955.45 | 468.31 | | -1675.18 | 213058.67 | | 233.87 | 233.08 | 0.00 |
| 11/25/2019 | | | 48.27 | Late Fees | | 1675.18 | | | | 48.27 | | 213058.67 | | 233.87 | 281.35 | 0.00 |
| 11/29/2019 | | | | MIP Paid | | 1675.18 | | | -149.10 | | | 213058.67 | | 84.77 | 281.35 | 0.00 |
| 11/29/2019 | | 959.00 | | Suspense Transaction | | 1675.18 | | | | | 959.00 | 213058.67 | | 84.77 | 281.35 | 959.00 |
| 12/1/2019 | 1671.84 | | | Contractual Payment Due | 12/1/2019 | 3347.02 | | | | | | 213058.67 | | 84.77 | 281.35 | 959.00 |
| 12/12/2019 | | 1315.00 | | Suspense Transaction | | 3347.02 | | | | | 1315.00 | 213058.67 | | 84.77 | 281.35 | 2274.00 |
| 12/12/2019 | | | | Payments Posting | *11/01/2019 | 1671.84 | 252.54 | 954.33 | 468.31 | | -1675.18 | 212806.13 | | 553.08 | 281.35 | 598.82 |
| 12/16/2019 | | | 24.32 | Late Fees | | 1671.84 | | | | 24.32 | | 212806.13 | | 553.08 | 305.67 | 598.82 |
| 12/20/2019 | | | | MIP Paid | | 1671.84 | | | -146.99 | | | 212806.13 | | 406.10 | 305.67 | 598.82 |
| 1/1/2020 | 1671.84 | | | Contractual Payment Due | 1/1/2020 | 3343.68 | | | | | | 212806.13 | | 406.10 | 305.67 | 598.82 |
| 1/16/2020 | | | 48.27 | Late Fees | | 3343.68 | | | | 48.27 | | 212806.13 | | 406.10 | 353.94 | 598.82 |
| 1/23/2020 | | 1530.00 | | Suspense Transaction | | 3343.68 | | | | | 1530.00 | 212806.13 | | 406.10 | 353.94 | 2128.82 |
| 1/23/2020 | | | | Payments Posting | *12/01/2019 | 1671.84 | 253.68 | 953.19 | 464.97 | | -1671.84 | 212552.45 | | 871.07 | 353.94 | 456.98 |

| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/29/2020 | | | | MIP Paid | | 1671.84 | | | -146.98 | | | 212552.45 | | 724.09 | 353.94 | 456.98 |
| 2/1/2020 | 1671.84 | | | Contractual Payment Due | 2/1/2020 | 3343.68 | | | | | | 212552.45 | | 724.09 | 353.94 | 456.98 |
| 2/17/2020 | | | 48.27 | Late Fees | | 3343.68 | | | | 48.27 | | 212552.45 | | 724.09 | 402.21 | 456.98 |
| 2/26/2020 | | | | MIP Paid | | 3343.68 | | | -146.98 | | | 212552.45 | | 577.11 | 402.21 | 456.98 |
| 3/1/2020 | 1671.84 | | | Contractual Payment Due | 3/1/2020 | 5015.52 | | | | | | 212552.45 | | 577.11 | 402.21 | 456.98 |
| 3/5/2020 | | 2461.00 | | Suspense Transaction | | 5015.52 | | | | | 2461.00 | 212552.45 | | 577.11 | 402.21 | 2917.98 |
| 3/5/2020 | | | | Payments Posting | *1/01/2020 | 3343.68 | 254.81 | 952.06 | 464.97 | | -1671.84 | 212297.64 | | 1042.08 | 402.21 | 1246.14 |
| 3/23/2020 | | 1230.00 | | Suspense Transaction | | 3343.68 | | | | | 1230.00 | 212297.64 | | 1042.08 | 402.21 | 2476.14 |
| 3/23/2020 | | | | Payments Posting | *2/01/2020 | 1671.84 | 255.95 | 950.92 | 464.97 | | -1671.84 | 212041.69 | | 1507.05 | 402.21 | 804.30 |
| 3/26/2020 | | | | MIP Paid | | 1671.84 | | | -146.98 | | | 212041.69 | | 1360.07 | 402.21 | 804.30 |
| 4/1/2020 | 1671.84 | | | Contractual Payment Due | 4/1/2020 | 3343.68 | | | | | | 212041.69 | | 1360.07 | 402.21 | 804.30 |
| 4/7/2020 | | 1451.00 | | Suspense Transaction | | 3343.68 | | | | | 1451.00 | 212041.69 | | 1360.07 | 402.21 | 2255.30 |
| 4/7/2020 | | | | Payments Posting | *3/01/2020 | 1671.84 | 257.10 | 949.77 | 464.97 | | -1671.84 | 211784.59 | | 1825.04 | 402.21 | 583.46 |
| 4/15/2020 | | | | Taxes Paid | | 1671.84 | | | -1,277.07 | | | 211784.59 | | 547.97 | 402.21 | 583.46 |
| 4/15/2020 | | 726.00 | | Suspense Transaction | | 1671.84 | | | | | 726.00 | 211784.59 | | 547.97 | 402.21 | 1309.46 |
| 4/16/2020 | | 363.00 | | Suspense Transaction | | 1671.84 | | | | | 363.00 | 211784.59 | | 547.97 | 402.21 | 1672.46 |
| 4/16/2020 | | | | Payments Posting | *4/01/2020 | 0.00 | 258.25 | 948.62 | 464.97 | | -1671.84 | 211526.34 | | 1012.94 | 402.21 | 0.62 |
| 4/16/2020 | | | -0.62 | Fees Paid | | 0.00 | | | | -0.62 | -0.62 | 211526.34 | | 1012.94 | 401.59 | 0.00 |
| 4/28/2020 | | | | MIP Paid | | 0.00 | | | -146.98 | | | 211526.34 | | 865.96 | 401.59 | 0.00 |
| 5/1/2020 | 1671.84 | | | Contractual Payment Due | 5/1/2020 | 1671.84 | | | | | | 211526.34 | | 865.96 | 401.59 | 0.00 |
| 5/14/2020 | | 1017.00 | | Suspense Transaction | | 1671.84 | | | | | 1017.00 | 211526.34 | | 865.96 | 401.59 | 1017.00 |
| 5/18/2020 | | | 7.59 | Late Fees | | 1671.84 | | | | 7.59 | | 211526.34 | | 865.96 | 409.18 | 1017.00 |
| 5/27/2020 | | | | MIP Paid | | 1671.84 | | | -146.98 | | | 211526.34 | | 718.98 | 409.18 | 1017.00 |
| 6/1/2020 | 1671.84 | | | Contractual Payment Due | 6/1/2020 | 3343.68 | | | | | | 211526.34 | | 718.98 | 409.18 | 1017.00 |
| 6/16/2020 | | | 48.27 | Late Fees | | 3343.68 | | | | 48.27 | | 211526.34 | | 718.98 | 457.45 | 1017.00 |
| 6/25/2020 | | 1373.00 | | Suspense Transaction | | 3343.68 | | | | | 1373.00 | 211526.34 | | 718.98 | 457.45 | 2390.00 |
| 6/25/2020 | | | | Payments Posting | *5/01/2020 | 1671.84 | 259.41 | 947.46 | 464.97 | | -1671.84 | 211266.93 | | 1183.95 | 457.45 | 718.16 |
| 6/25/2020 | | | | MIP Paid | | 1671.84 | | | -146.98 | | | 211266.93 | | 1036.97 | 457.45 | 718.16 |
| 7/1/2020 | 1671.84 | | | Contractual Payment Due | 7/1/2020 | 3343.68 | | | | | | 211266.93 | | 1036.97 | 457.45 | 718.16 |
| 7/28/2020 | | | | MIP Paid | | 3343.68 | | | -146.98 | | | 211266.93 | | 889.99 | 457.45 | 718.16 |
| 8/1/2020 | 1671.84 | | | Contractual Payment Due | 8/1/2020 | 5015.52 | | | | | | 211266.93 | | 889.99 | 457.45 | 718.16 |
| 8/7/2020 | | 2382.00 | | Suspense Transaction | | 5015.52 | | | | | 2382.00 | 211266.93 | | 889.99 | 457.45 | 3100.16 |
| 8/7/2020 | | | | Payments Posting | *6/01/2020 | 3343.68 | 260.57 | 946.30 | 464.97 | | -1671.84 | 211006.36 | | 1354.96 | 457.45 | 1428.32 |
| 8/27/2020 | | | | MIP Paid | | 3343.68 | | | -146.98 | | | 211006.36 | | 1207.98 | 457.45 | 1428.32 |
| 9/1/2020 | 1671.84 | | | Contractual Payment Due | 9/1/2020 | 5015.52 | | | | | | 211006.36 | | 1207.98 | 457.45 | 1428.32 |
| 9/8/2020 | | | | Taxes Paid | | 5015.52 | | | -1,629.94 | | | 211006.36 | | -421.96 | 457.45 | 1428.32 |
| 9/24/2020 | | | | MIP Paid | | 5015.52 | | | -146.98 | | | 211006.36 | | -568.94 | 457.45 | 1428.32 |
| 10/1/2020 | 1671.84 | | | Contractual Payment Due | 10/1/2020 | 6687.36 | | | | | | 211006.36 | | -568.94 | 457.45 | 1428.32 |
| 10/27/2020 | | | | MIP Paid | | 6687.36 | | | -146.98 | | | 211006.36 | | -715.92 | 457.45 | 1428.32 |
| 10/29/2020 | | | | Insurance Paid | | 6687.36 | | | -1,017.00 | | | 211006.36 | | -1732.92 | 457.45 | 1428.32 |
| 11/1/2020 | 1671.84 | | | Contractual Payment Due | 11/1/2020 | 8359.20 | | | | | | 211006.36 | | -1732.92 | 457.45 | 1428.32 |
| 12/1/2020 | 1678.36 | | | Contractual Payment Due | 12/1/2020 | 10037.56 | | | | | | 211006.36 | | -1732.92 | 457.45 | 1428.32 |
| 12/4/2020 | | | | MIP Paid | | 10037.56 | | | -146.98 | | | 211006.36 | | -1879.90 | 457.45 | 1428.32 |
| 1/1/2021 | 1678.36 | | | Contractual Payment Due | 1/1/2021 | 11715.92 | | | | | | 211006.36 | | -1879.90 | 457.45 | 1428.32 |
| 1/4/2021 | | | | MIP Paid | | 11715.92 | | | -144.74 | | | 211006.36 | | -2024.64 | 457.45 | 1428.32 |
| 2/1/2021 | 1678.36 | | | Contractual Payment Due | 2/1/2021 | 13394.28 | | | | | | 211006.36 | | -2024.64 | 457.45 | 1428.32 |
| 2/4/2021 | | | | MIP Paid | | 13394.28 | | | -144.74 | | | 211006.36 | | -2169.38 | 457.45 | 1428.32 |
| 3/1/2021 | 1678.36 | | | Contractual Payment Due | 3/1/2021 | 15072.64 | | | | | | 211006.36 | | -2169.38 | 457.45 | 1428.32 |
| 3/4/2021 | | | | MIP Paid | | 15072.64 | | | -144.74 | | | 211006.36 | | -2314.12 | 457.45 | 1428.32 |
| 3/23/2021 | | | 20.00 | Billed - Recoverable Insp Fee | | 15072.64 | | | | 20.00 | | 211006.36 | | -2314.12 | 477.45 | 1428.32 |
| 4/1/2021 | 1678.36 | | | Contractual Payment Due | 4/1/2021 | 16751.00 | | | | | | 211006.36 | | -2314.12 | 477.45 | 1428.32 |
| 4/2/2021 | | | | Taxes Paid | | 16751.00 | | | -1,208.27 | | | 211006.36 | | -3522.39 | 477.45 | 1428.32 |
| 4/5/2021 | | | | MIP Paid | | 16751.00 | | | -144.74 | | | 211006.36 | | -3667.13 | 477.45 | 1428.32 |
| 4/28/2021 | | | 20.00 | Billed - Recoverable Insp Fee | | 16751.00 | | | | 20.00 | | 211006.36 | | -3667.13 | 497.45 | 1428.32 |
| 5/1/2021 | 1678.36 | | | Contractual Payment Due | 5/1/2021 | 18429.36 | | | | | | 211006.36 | | -3667.13 | 497.45 | 1428.32 |
| 5/4/2021 | | | | MIP Paid | | 18429.36 | | | -144.74 | | | 211006.36 | | -3811.87 | 497.45 | 1428.32 |
| 5/27/2021 | | | 20.00 | Billed - Recoverable Insp Fee | | 18429.36 | | | | 20.00 | | 211006.36 | | -3811.87 | 517.45 | 1428.32 |
| 6/1/2021 | 1678.36 | | | Contractual Payment Due | 6/1/2021 | 20107.72 | | | | | | 211006.36 | | -3811.87 | 517.45 | 1428.32 |
| 6/4/2021 | | | | MIP Paid | | 20107.72 | | | -144.74 | | | 211006.36 | | -3956.61 | 517.45 | 1428.32 |
| 7/1/2021 | 1678.36 | | | Contractual Payment Due | 7/1/2021 | 21786.08 | | | | | | 211006.36 | | -3956.61 | 517.45 | 1428.32 |
| 7/1/2021 | | | 20.00 | Billed - Recoverable Insp Fee | | 21786.08 | | | | 20.00 | | 211006.36 | | -3956.61 | 537.45 | 1428.32 |
| 7/2/2021 | | | | MIP Paid | | 21786.08 | | | -144.74 | | | 211006.36 | | -4101.35 | 537.45 | 1428.32 |
| 8/1/2021 | 1678.36 | | | Contractual Payment Due | 8/1/2021 | 23464.44 | | | | | | 211006.36 | | -4101.35 | 537.45 | 1428.32 |
| 8/4/2021 | | | | MIP Paid | | 23464.44 | | | -144.74 | | | 211006.36 | | -4246.09 | 537.45 | 1428.32 |
| 9/1/2021 | 1678.36 | | | Contractual Payment Due | 9/1/2021 | 25142.80 | | | | | | 211006.36 | | -4246.09 | 537.45 | 1428.32 |
| 9/2/2021 | | | | Taxes Paid | | 25142.80 | | | -1,629.94 | | | 211006.36 | | -5876.03 | 537.45 | 1428.32 |

| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/3/2021 | | | | MIP Paid | | 25142.80 | | | -144.74 | | | 211006.36 | | -6020.77 | 537.45 | 1428.32 |
| 10/1/2021 | 1678.36 | | | Contractual Payment Due | 10/1/2021 | 26821.16 | | | | | | 211006.36 | | -6020.77 | 537.45 | 1428.32 |
| 10/4/2021 | | | | MIP Paid | | 26821.16 | | | -144.74 | | | 211006.36 | | -6165.51 | 537.45 | 1428.32 |
| 10/13/2021 | | | | Insurance Paid | | 26821.16 | | | -1,138.00 | | | 211006.36 | | -7303.51 | 537.45 | 1428.32 |
| 11/1/2021 | 1678.36 | | | Contractual Payment Due | 11/1/2021 | 28499.52 | | | | | | 211006.36 | | -7303.51 | 537.45 | 1428.32 |
| 11/4/2021 | | | | MIP Paid | | 28499.52 | | | -144.74 | | | 211006.36 | | -7448.25 | 537.45 | 1428.32 |
| 12/1/2021 | 1678.36 | | | Contractual Payment Due | 12/1/2021 | 30177.88 | | | | | | 211006.36 | | -7448.25 | 537.45 | 1428.32 |
| 12/6/2021 | | | | MIP Paid | | 30177.88 | | | -144.74 | | | 211006.36 | | -7592.99 | 537.45 | 1428.32 |
| 1/1/2022 | 1694.02 | | | Contractual Payment Due | 1/1/2022 | 31871.90 | | | | | | 211006.36 | | -7592.99 | 537.45 | 1428.32 |
| 1/4/2022 | | | | MIP Paid | | 31871.90 | | | -142.38 | | | 211006.36 | | -7735.37 | 537.45 | 1428.32 |
| 1/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 1/1/2022 | 31871.90 | | | | 48.27 | | 211006.36 | | -7735.37 | 585.72 | 1428.32 |
| 2/1/2022 | 1694.02 | | | Contractual Payment Due | 2/1/2022 | 33565.92 | | | | | | 211006.36 | | -7735.37 | 585.72 | 1428.32 |
| 2/4/2022 | | | | MIP Paid | | 33565.92 | | | -142.38 | | | 211006.36 | | -7877.75 | 585.72 | 1428.32 |
| 2/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 2/1/2022 | 33565.92 | | | | 48.27 | | 211006.36 | | -7877.75 | 633.99 | 1428.32 |
| 3/1/2022 | 1694.02 | | | Contractual Payment Due | 3/1/2022 | 35259.94 | | | | | | 211006.36 | | -7877.75 | 633.99 | 1428.32 |
| 3/4/2022 | | | | MIP Paid | | 35259.94 | | | -142.38 | | | 211006.36 | | -8020.13 | 633.99 | 1428.32 |
| 3/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 3/1/2022 | 35259.94 | | | | 48.27 | | 211006.36 | | -8020.13 | 682.26 | 1428.32 |
| 4/1/2022 | 1694.02 | | | Contractual Payment Due | 4/1/2022 | 36953.96 | | | | | | 211006.36 | | -8020.13 | 682.26 | 1428.32 |
| 4/1/2022 | | | | Taxes Paid | | 36953.96 | | | -1,208.27 | | | 211006.36 | | -9228.40 | 682.26 | 1428.32 |
| 4/4/2022 | | | | MIP Paid | | 36953.96 | | | -142.38 | | | 211006.36 | | -9370.78 | 682.26 | 1428.32 |
| 4/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 4/1/2022 | 36953.96 | | | | 48.27 | | 211006.36 | | -9370.78 | 730.53 | 1428.32 |
| 4/22/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 36953.96 | | | | 20.00 | | 211006.36 | | -9370.78 | 750.53 | 1428.32 |
| 5/1/2022 | 1694.02 | | | Contractual Payment Due | 5/1/2022 | 38647.98 | | | | | | 211006.36 | | -9370.78 | 750.53 | 1428.32 |
| 5/4/2022 | | | | MIP Paid | | 38647.98 | | | -142.38 | | | 211006.36 | | -9513.16 | 750.53 | 1428.32 |
| 5/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 5/1/2022 | 38647.98 | | | | 48.27 | | 211006.36 | | -9513.16 | 798.80 | 1428.32 |
| 5/25/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 38647.98 | | | | 20.00 | | 211006.36 | | -9513.16 | 818.80 | 1428.32 |
| 6/1/2022 | 1694.02 | | | Contractual Payment Due | 6/1/2022 | 40342.00 | | | | | | 211006.36 | | -9513.16 | 818.80 | 1428.32 |
| 6/6/2022 | | | | MIP Paid | | 40342.00 | | | -142.38 | | | 211006.36 | | -9655.54 | 818.80 | 1428.32 |
| 6/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 6/1/2022 | 40342.00 | | | | 48.27 | | 211006.36 | | -9655.54 | 867.07 | 1428.32 |
| 6/23/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 40342.00 | | | | 20.00 | | 211006.36 | | -9655.54 | 887.07 | 1428.32 |
| 7/1/2022 | 1694.02 | | | Contractual Payment Due | 7/1/2022 | 42036.02 | | | | | | 211006.36 | | -9655.54 | 887.07 | 1428.32 |
| 7/5/2022 | | | | MIP Paid | | 42036.02 | | | -142.38 | | | 211006.36 | | -9797.92 | 887.07 | 1428.32 |
| 7/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 7/1/2022 | 42036.02 | | | | 48.27 | | 211006.36 | | -9797.92 | 935.34 | 1428.32 |
| 7/20/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 42036.02 | | | | 20.00 | | 211006.36 | | -9797.92 | 955.34 | 1428.32 |
| 8/1/2022 | 1694.02 | | | Contractual Payment Due | 8/1/2022 | 43730.04 | | | | | | 211006.36 | | -9797.92 | 955.34 | 1428.32 |
| 8/4/2022 | | | | MIP Paid | | 43730.04 | | | -142.38 | | | 211006.36 | | -9940.30 | 955.34 | 1428.32 |
| 8/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 8/1/2022 | 43730.04 | | | | 48.27 | | 211006.36 | | -9940.30 | 1003.61 | 1428.32 |
| 8/17/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 43730.04 | | | | 20.00 | | 211006.36 | | -9940.30 | 1023.61 | 1428.32 |
| 9/1/2022 | 1694.02 | | | Contractual Payment Due | 9/1/2022 | 45424.06 | | | | | | 211006.36 | | -9940.30 | 1023.61 | 1428.32 |
| 9/2/2022 | | | | MIP Paid | | 45424.06 | | | -142.38 | | | 211006.36 | | -10082.68 | 1023.61 | 1428.32 |
| 9/12/2022 | | | | Taxes Paid | | 45424.06 | | | -1,629.94 | | | 211006.36 | | -11712.62 | 1023.61 | 1428.32 |
| 9/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 9/1/2022 | 45424.06 | | | | 48.27 | | 211006.36 | | -11712.62 | 1071.88 | 1428.32 |
| 9/20/2022 | | | 315.00 | Billed - Legal-Misc Fee | | 45424.06 | | | | 315.00 | | 211006.36 | | -11712.62 | 1386.88 | 1428.32 |
| 9/23/2022 | | | 340.00 | Billed - Expense Advances | | 45424.06 | | | | 340.00 | | 211006.36 | | -11712.62 | 1726.88 | 1428.32 |
| 9/23/2022 | | | 130.00 | Billed - Expense Advances | | 45424.06 | | | | 130.00 | | 211006.36 | | -11712.62 | 1856.88 | 1428.32 |
| 9/23/2022 | | | 264.68 | Billed - Expense Advances | | 45424.06 | | | | 264.68 | | 211006.36 | | -11712.62 | 2121.56 | 1428.32 |
| 10/1/2022 | 1694.02 | | | Contractual Payment Due | 10/1/2022 | 47118.08 | | | | | | 211006.36 | | -11712.62 | 2121.56 | 1428.32 |
| 10/4/2022 | | | | MIP Paid | | 47118.08 | | | -142.38 | | | 211006.36 | | -11855.00 | 2121.56 | 1428.32 |
| 10/5/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 47118.08 | | | | 20.00 | | 211006.36 | | -11855.00 | 2141.56 | 1428.32 |
| 10/12/2022 | | | | Insurance Paid | | 47118.08 | | | -1,267.00 | | | 211006.36 | | -13122.00 | 2141.56 | 1428.32 |
| 10/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 10/1/2022 | 47118.08 | | | | 48.27 | | 211006.36 | | -13122.00 | 2189.83 | 1428.32 |
| 10/20/2022 | | | | Funds Received | | 47118.08 | | | | | | 211006.36 | | -13122.00 | 2189.83 | 1428.32 |
| 11/1/2022 | 1694.02 | | | Contractual Payment Due | 11/1/2022 | 48812.10 | | | | | | 211006.36 | | -13122.00 | 2189.83 | 1428.32 |
| 11/4/2022 | | | | MIP Paid | | 48812.10 | | | -142.38 | | | 211006.36 | | -13264.38 | 2189.83 | 1428.32 |
| 11/9/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 48812.10 | | | | 20.00 | | 211006.36 | | -13264.38 | 2209.83 | 1428.32 |
| 11/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 11/1/2022 | 48812.10 | | | | 48.27 | | 211006.36 | | -13264.38 | 2258.10 | 1428.32 |
| 12/1/2022 | 1694.02 | | | Contractual Payment Due | 12/1/2022 | 50506.12 | | | | | | 211006.36 | | -13264.38 | 2258.10 | 1428.32 |
| 12/2/2022 | | | | MIP Paid | | 50506.12 | | | -142.38 | | | 211006.36 | | -13406.76 | 2258.10 | 1428.32 |
| 12/14/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 50506.12 | | | | 20.00 | | 211006.36 | | -13406.76 | 2278.10 | 1428.32 |
| 12/16/2022 | | | 48.27 | Late Fee for Uncollected Pmt | 12/1/2022 | 50506.12 | | | | 48.27 | | 211006.36 | | -13406.76 | 2326.37 | 1428.32 |
| 1/1/2023 | 1702.43 | | | Contractual Payment Due | 1/1/2023 | 52208.55 | | | | | | 211006.36 | | -13406.76 | 2326.37 | 1428.32 |
| 1/4/2023 | | | | MIP Paid | | 52208.55 | | | -139.89 | | | 211006.36 | | -13546.65 | 2326.37 | 1428.32 |
| 1/5/2023 | | | | Funds Received | | 52208.55 | | | | | | 211006.36 | | -13546.65 | 2326.37 | 1428.32 |
| 1/9/2023 | | | 20.00 | Billed - Recoverable Insp Fee | | 52208.55 | | | | 20.00 | | 211006.36 | | -13546.65 | 2346.37 | 1428.32 |
| 1/16/2023 | | | 48.27 | Late Fee for Uncollected Pmt | 1/1/2023 | 52208.55 | | | | 48.27 | | 211006.36 | | -13546.65 | 2394.64 | 1428.32 |
| 2/1/2023 | 1702.43 | | | Contractual Payment Due | 2/1/2023 | 53910.98 | | | | | | 211006.36 | | -13546.65 | 2394.64 | 1428.32 |

| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/3/2023 | | | | MIP Paid | | 53910.98 | | | -139.89 | | | 211006.36 | | -13686.54 | 2394.64 | 1428.32 |
| 2/16/2023 | | 48.27 | | Late Fee for Uncollected Pmt | 2/1/2023 | 53910.98 | | | | 48.27 | | 211006.36 | | -13686.54 | 2442.91 | 1428.32 |
| 3/1/2023 | 1702.43 | | | Contractual Payment Due | 3/1/2023 | 55613.41 | | | | | | 211006.36 | | -13686.54 | 2442.91 | 1428.32 |
| 3/6/2023 | | | | MIP Paid | | 55613.41 | | | -139.89 | | | 211006.36 | | -13826.43 | 2442.91 | 1428.32 |
| 3/9/2023 | | | 20.00 | Billed - Recoverable Insp Fee | | 55613.41 | | | | 20.00 | | 211006.36 | | -13826.43 | 2462.91 | 1428.32 |
| 3/16/2023 | | 48.27 | | Late Fee for Uncollected Pmt | 3/1/2023 | 55613.41 | | | | 48.27 | | 211006.36 | | -13826.43 | 2511.18 | 1428.32 |
| 3/31/2023 | | | | Taxes Paid | | 55613.41 | | | -1,208.27 | | | 211006.36 | | -15034.70 | 2511.18 | 1428.32 |
| 4/1/2023 | 1702.43 | | | Contractual Payment Due | 4/1/2023 | 57315.84 | | | | | | 211006.36 | | -15034.70 | 2511.18 | 1428.32 |
| 4/4/2023 | | | | MIP Paid | | 57315.84 | | | -139.89 | | | 211006.36 | | -15174.59 | 2511.18 | 1428.32 |
| 4/6/2023 | | | 20.00 | Billed - Recoverable Insp Fee | | 57315.84 | | | | 20.00 | | 211006.36 | | -15174.59 | 2531.18 | 1428.32 |
| 4/16/2023 | | 48.27 | | Late Fee for Uncollected Pmt | 4/1/2023 | 57315.84 | | | | 48.27 | | 211006.36 | | -15174.59 | 2579.45 | 1428.32 |
| 4/27/2023 | | | 68.45 | Billed - Expense Advances | | 57315.84 | | | | 68.45 | | 211006.36 | | -15174.59 | 2647.90 | 1428.32 |
| 4/27/2023 | | | 570.00 | Billed - Expense Advances | | 57315.84 | | | | 570.00 | | 211006.36 | | -15174.59 | 3217.90 | 1428.32 |
| 4/27/2023 | | | 690.00 | Billed - Expense Advances | | 57315.84 | | | | 690.00 | | 211006.36 | | -15174.59 | 3907.90 | 1428.32 |
| 5/1/2023 | 1702.43 | | | Contractual Payment Due | 5/1/2023 | 59018.27 | | | | | | 211006.36 | | -15174.59 | 3907.90 | 1428.32 |
| 5/3/2023 | | | | MIP Paid | | 59018.27 | | | -139.89 | | | 211006.36 | | -15314.48 | 3907.90 | 1428.32 |
| 5/4/2023 | | | 20.00 | Billed - Recoverable Insp Fee | | 59018.27 | | | | 20.00 | | 211006.36 | | -15314.48 | 3927.90 | 1428.32 |
| 5/5/2023 | | | 120.00 | Billed - Expense Advances | | 59018.27 | | | | 120.00 | | 211006.36 | | -15314.48 | 4047.90 | 1428.32 |
| 5/16/2023 | | 48.27 | | Late Fee for Uncollected Pmt | 5/1/2023 | 59018.27 | | | | 48.27 | | 211006.36 | | -15314.48 | 4096.17 | 1428.32 |
| 6/1/2023 | 1702.43 | | | Contractual Payment Due | 6/1/2023 | 60720.70 | | | | | | 211006.36 | | -15314.48 | 4096.17 | 1428.32 |
| 6/5/2023 | | | | MIP Paid | | 60720.70 | | | -139.89 | | | 211006.36 | | -15454.37 | 4096.17 | 1428.32 |
| 6/8/2023 | | | 20.00 | Billed - Recoverable Insp Fee | | 60720.70 | | | | 20.00 | | 211006.36 | | -15454.37 | 4116.17 | 1428.32 |
| 6/16/2023 | | 48.27 | | Late Fee for Uncollected Pmt | 6/1/2023 | 60720.70 | | | | 48.27 | | 211006.36 | | -15454.37 | 4164.44 | 1428.32 |
| 6/26/2023 | | | 400.00 | Billed - Expense Advances | | 60720.70 | | | | 400.00 | | 211006.36 | | -15454.37 | 4564.44 | 1428.32 |
| 6/29/2023 | | | 2000.00 | Billed - Expense Advances | | 60720.70 | | | | 2000.00 | | 211006.36 | | -15454.37 | 6564.44 | 1428.32 |
| 6/29/2023 | | | 670.00 | Billed - Expense Advances | | 60720.70 | | | | 670.00 | | 211006.36 | | -15454.37 | 7234.44 | 1428.32 |
| 6/29/2023 | | | 44.75 | Billed - Expense Advances | | 60720.70 | | | | 44.75 | | 211006.36 | | -15454.37 | 7279.19 | 1428.32 |
| 6/29/2023 | | | 58.75 | Billed - Expense Advances | | 60720.70 | | | | 58.75 | | 211006.36 | | -15454.37 | 7337.94 | 1428.32 |
| 6/29/2023 | | | 145.00 | Billed - Expense Advances | | 60720.70 | | | | 145.00 | | 211006.36 | | -15454.37 | 7482.94 | 1428.32 |
| 7/1/2023 | 1702.43 | | | Contractual Payment Due | 7/1/2023 | 62423.13 | | | | | | 211006.36 | | -15454.37 | 7482.94 | 1428.32 |
| 7/3/2023 | | | | MIP Paid | | 62423.13 | | | -139.89 | | | 211006.36 | | -15594.26 | 7482.94 | 1428.32 |
| 7/6/2023 | | | 20.00 | Billed - Recoverable Insp Fee | | 62423.13 | | | | 20.00 | | 211006.36 | | -15594.26 | 7502.94 | 1428.32 |
| 7/16/2023 | | 48.27 | | Late Fee for Uncollected Pmt | 7/1/2023 | 62423.13 | | | | 48.27 | | 211006.36 | | -15594.26 | 7551.21 | 1428.32 |
| 8/1/2023 | 1702.43 | | | Contractual Payment Due | 8/1/2023 | 64125.56 | | | | | | 211006.36 | | -15594.26 | 7551.21 | 1428.32 |
| 8/2/2023 | | | 20.00 | Billed - Recoverable Insp Fee | | 64125.56 | | | | 20.00 | | 211006.36 | | -15594.26 | 7571.21 | 1428.32 |
| 8/3/2023 | | | | MIP Paid | | 64125.56 | | | -139.89 | | | 211006.36 | | -15734.15 | 7571.21 | 1428.32 |
| 8/16/2023 | | 48.27 | | Late Fee for Uncollected Pmt | 8/1/2023 | 64125.56 | | | | 48.27 | | 211006.36 | | -15734.15 | 7619.48 | 1428.32 |
| 8/30/2023 | | | | Taxes Paid | | 64125.56 | | | -1,629.94 | | | 211006.36 | | -17364.09 | 7619.48 | 1428.32 |
| 9/1/2023 | 1702.43 | | | Contractual Payment Due | 9/1/2023 | 65827.99 | | | | | | 211006.36 | | -17364.09 | 7619.48 | 1428.32 |
| 9/5/2023 | | | | MIP Paid | | 65827.99 | | | -139.89 | | | 211006.36 | | -17503.98 | 7619.48 | 1428.32 |
| 9/6/2023 | | | 20.00 | Billed - Recoverable Insp Fee | | 65827.99 | | | | 20.00 | | 211006.36 | | -17503.98 | 7639.48 | 1428.32 |
| 9/6/2023 | | | 75.00 | Billed - Expense Advances | | 65827.99 | | | | 75.00 | | 211006.36 | | -17503.98 | 7714.48 | 1428.32 |
| 9/6/2023 | | | 52.60 | Billed - Expense Advances | | 65827.99 | | | | 52.60 | | 211006.36 | | -17503.98 | 7767.08 | 1428.32 |

**MIDLAND MORTGAGE**

*A division of MidFirst Bank*

ERICA RUIZ                                  YOUR LOAN NUMBER: ███████
MANUEL VILLANUEVA                           BANKRUPTCY CASE # 23-12650
512 JEFFERSON AVENUE
BRISTOL          PA 19007-0000
                                            DATE: 09/06/23


          *** ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS ***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED.
THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS
REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED
ESCROW ACTIVITY FOR YOUR ESCROW CYCLE  BEGINNING    10/23 THROUGH    09/24.
------- ANTICIPATED PAYMENTS FROM ESCROW -    10/23 THROUGH    09/24 -------
          HAZARD                       1267.00
          MIP PREM TO HUD              1678.68
          CITY/TOWN TAX               1208.27
          SCHOOL DISTRICT             1629.94

          TOTAL PAYMENTS FROM ESCROW    5783.89

          MONTHLY PAYMENT TO ESCROW      481.99 (1/12TH OF ABOVE TOTAL)

------- ANTICIPATED ESCROW ACTIVITY -    10/23 THROUGH    09/24--------
          -ANTICIPATED PAYMENTS-           -- ESCROW BALANCE COMPARISON --

| MONTH | TO ESCROW | FROM ESCROW | DESCRIPTION | ANTICIPATED | | REQUIRED |
|-------|-----------|-------------|-------------|-------------|---|----------|
|       |           |             | ACTUAL STARTING BALANCE | 1256.08 | | 1267.00 |
| OCT 23 | 481.99 | 139.89 | MIP PREM TO HUD | 1598.18 | | 1609.10 |
| NOV 23 | 481.99 | 1267.00 | HAZARD | | | |
|       |           | 139.89 | MIP PREM TO  ALP | 673.28 | RLP | 684.20 |
| DEC 23 | 481.99 | 139.89 | MIP PREM TO HUD | 1015.38 | | 1026.30 |
| JAN 24 | 481.99 | 139.89 | MIP PREM TO HUD | 1357.48 | | 1368.40 |
| FEB 24 | 481.99 | 139.89 | MIP PREM TO HUD | 1699.58 | | 1710.50 |
| MAR 24 | 481.99 | 139.89 | MIP PREM TO HUD | 2041.68 | | 2052.60 |
| APR 24 | 481.99 | 139.89 | MIP PREM TO HUD | | | |
|       |           | 1208.27 | CITY/TOWN TAX | 1175.51 | | 1186.43 |
| MAY 24 | 481.99 | 139.89 | MIP PREM TO HUD | 1517.61 | | 1528.53 |
| JUN 24 | 481.99 | 139.89 | MIP PREM TO HUD | 1859.71 | | 1870.63 |
| JUL 24 | 481.99 | 139.89 | MIP PREM TO HUD | 2201.81 | | 2212.73 |
| AUG 24 | 481.99 | 139.89 | MIP PREM TO HUD | 2543.91 | | 2554.83 |
| SEP 24 | 481.99 | 139.89 | MIP PREM TO HUD | | | |
|       |           | 1629.94 | SCHOOL DISTRICT | 1256.07 | | 1266.99 |

------------ DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE ------------

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS LESS THAN THE REQUIRED BALANCE
(RLP), THEN YOU HAVE AN ESCROW SHORTAGE. YOUR ESCROW SHORTAGE IS      -10.92.


WILL BE COLLECTED FOR A PERIOD OF 00 MONTHS FROM OCTOBER 01, 2023

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS GREATER THAN THE REQUIRED
BALANCE (RLP), THEN YOU HAVE AN ESCROW SURPLUS. YOUR SURPLUS IS        0.00.

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK  73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK  73126-8959

**MIDLAND MORTGAGE**

*A division of MidFirst Bank*

```
*ADJUSTED ESCROW SHORTAGE IS                                    0.00.
------------------ CALCULATION OF YOUR NEW PAYMENT AMOUNT ------------------
          PRINCIPAL & INTEREST                           1206.87
          ESCROW (1/12TH OF ANNUAL ANTICIPATED            481.99
             DISBURSEMENTS AS COMPUTED ABOVE)
          PLUS: OPTIONAL INSURANCE PREMIUMS                  0.00
          PLUS: REPLACEMENT RESERVE OR FHA SVC CHG           0.00
          PLUS: SHORTAGE PAYMENT                             0.00
          MINUS: SURPLUS CREDIT                              0.00
          ROUNDING ADJUSTMENT                                0.00
          MINUS: BUYDOWN/ASSISTANCE PAYMENTS                 0.00
```

```
BORROWER PAYMENT STARTING WITH THE PAYMENT DUE 10/01/23    1688.86
NOTE: YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF
MONEY HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING
OVERDRAWN WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES
A MAXIMUM ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANTICIPATED
ESCROW DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS       684.20.
YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. WHEN YOUR
ESCROW BALANCE REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE
IS TARGETED TO BE YOUR CUSHION AMOUNT.
```

```
YOUR ESCROW CUSHION FOR THIS CYCLE IS       684.20.
```

```
YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT
TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT
TO OR DISBURSEMENT FROM ESCROW):
ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
07/20      464.97      08/20        464.97      09/20      17830.12   *
ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
00/00      0.00                     00/00      0.00
00/00      0.00                     00/00      0.00
00/00      0.00                     00/00      0.00
```

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK 73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com

**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# IIII Midland Mortgage

*A Division of MidFirst Bank*

**YOUR LOAN NUMBER** ███████

** POC DISCLOSURE ESCROW ACCOUNT HISTORY **

| DATE | TRANSACTION TY | AMOUNT | ESC BAL |
|------|---------------|--------|---------|
| 9/12/2022 | PROPERTY TAX PAYMENT | ($1,629.94) | ($11,712.62) |
| 10/4/2022 | MORTGAGE INSURANCE PREMIUM | ($142.38) | ($11,855.00) |
| 10/12/2022 | PROPERTY INSURANCE PAYMENT | ($1,267.00) | ($13,122.00) |
| 11/4/2022 | MORTGAGE INSURANCE PREMIUM | ($142.38) | ($13,264.38) |
| 12/2/2022 | MORTGAGE INSURANCE PREMIUM | ($142.38) | ($13,406.76) |
| 1/4/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($13,546.65) |
| 2/3/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($13,686.54) |
| 3/6/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($13,826.43) |
| 3/31/2023 | PROPERTY TAX PAYMENT | ($1,208.27) | ($15,034.70) |
| 4/4/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($15,174.59) |
| 5/3/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($15,314.48) |
| 6/5/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($15,454.37) |
| 7/3/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($15,594.26) |
| 8/3/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($15,734.15) |
| 8/30/2023 | PROPERTY TAX PAYMENT | ($1,629.94) | ($17,364.09) |
| 9/5/2023 | MORTGAGE INSURANCE PREMIUM | ($139.89) | ($17,503.98) |

Midland Mortgage Customer Service
P.O. Box 18543 · Oklahoma City, OK 73128-0548 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MidMidlandMortgage.com
Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# NOTE

| | | |
|---|---|---|
| **November 2, 2018** | **Mount Laurel,** | **New Jersey** |
| [Date] | [City] | [State] |

**512 Jefferson Avenue, Bristol, PA 19007**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$215,523.00**      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  **American Neighborhood Mortgage Acceptance Company LLC., a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  **5.375 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  **1st**      day of each month beginning on  **January 1, 2019.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **December 1, 2048,**      I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at  **700 East Gate Drive, Suite 400**
**Mt. Laurel, NJ 08054**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$1,206.87.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**PENNSYLVANIA FIXED RATE NOTE** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      3239 2/16
Modified for FHA 5/16                                                                                      Initials:
Ellie Mae, Inc.                                          Page 1 of 3

11/01/2018 10:30 AM PST

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11.  EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a)  any default described in Section 6(B) of this Note;

(b)  Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c)  Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d)  the Maturity Date as defined in this Note;

(e)  the entry of any judgment against me under this Note; and

(f)  the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ **(Seal)**
**ERICA RUIZ**

_____ **(Seal)**
**MANUEL VILLANUEVA**



[Sign Original Only]

PENNSYLVANIA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    3239 2/16
Modified for FHA 5/16                                                                                      Initials:
Ellie Mae, Inc.                                  Page 3 of

11/01/2018 10:30 AM PST

# **ALLONGE TO NOTE**

LOAN AMOUNT: $215,523.00

ALLONGE TO ONE CERTAIN NOTE DATE: **11/02/2018**

AND EXECUTED BY: **Erica  Ruiz  &  Manuel Villanueva**

PROPERTY ADDRESS: **512 Jefferson Avenue, Bristol, PA  19007**

PAY TO THE ORDER OF: *Nationsta Mrtgage, LLc.*

WITHOUT RECOURSE: American Neighborhood Mortgage Acceptance Company,
LLC, A Limited Liability Company

BY: _____

TITLE: Joseph E Brangan
       VP of Secondary Markets

**ALLONGE TO NOTE**

ALLONGE TO NOTE DATE:  November 2, 2018

**LOAN AMOUNT:** $215,523.00

**PROPERTY ADDRESS:** 512 JEFFERSON AVENUE
BRISTOL, PA  19007

**AND  EXECUTED BY:**

ERICA RUIZ

**PAY TO THE ORDER OF**

## MIDFIRST BANK

**WITHOUT RECOURSE**

Nationstar Mortgage LLC dba Mr. Cooper

BY:

Heather Ashton
**TITLE:  Assistant Secretary**
**DATE:** November 19, 2018

**ALLONGE TO NOTE**

**ALLONGE TO NOTE DATE:** November 2, 2018

**LOAN AMOUNT:** $215,523.00

**PROPERTY ADDRESS:** 512 JEFFERSON AVENUE
BRISTOL, PA 19007

**IN FAVOR OF:**

**AND EXECUTED BY:**

Erica Ruiz and Manuel Villanueva

**PAY TO THE ORDER OF**

**WITHOUT RECOURSE**

Nationstar Mortgage LLC dba Mr. Cooper

BY: _____
Betty Collins
**TITLE:  Assistant Secretary**
**DATE:** November 21, 2018

**BUCKS COUNTY RECORDER OF DEEDS**
**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

**Recorded On 11/7/2018 At 9:08:20 AM**            **\* Total Pages - 24**
**\* Instrument Type - MORTGAGE - CORPORATIONS**
                              **User -  JLC**
**\* Mortgagor - RUIZ, ERICA**
**\* Mortgagee - AMERICAN NEIGHBORHOOD MTG ACCEPTANCE CO L L C**
**\* Customer - SIMPLIFILE LC E-RECORDING**
**\* FEES**
  **RECORDING FEES          $157.75**
  **TOTAL PAID              $157.75**

> Bucks County UPI Certification
> On November 7, 2018 By JJK

> This is a certification page
>
> # DO NOT DETACH
>
> This page is now part
> of this legal document.

**RETURN DOCUMENT TO:**
**S&W CLOSING SERVICES, INC.**
**605 CORPORATE DRIVE WEST**
**LANGHORNE, PA 19047**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

M. Robinson

**Robin M. Robinson**
**Recorder of Deeds**

**\* - Information denoted by an asterisk may change during**
    **the verification process and may not be reflected on this page.**

**When recorded, return to:**
**First American Mortgage Solutions On**
**Behalf of AnnieMac Home Mortgage**
**Attn: Final Document Department**
**1795 International Way**
**Idaho Falls, ID 83402**

**This document was prepared by:**
**Zakejia Washington**
**Loan Closer**
**American Neighborhood Mortgage**
**Acceptance Company, LLC**
**700 East Gate Drive, Suite 400**
**Mount Laurel, NJ 08054**
**856-813-5582**

———————————— **[Space Above This Line For Recording Data]** ————————————

# MORTGAGE

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words
used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated
**November 2, 2018,** together with all Riders to this document.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)                         Initials: _____ MV
Ellie Mae, Inc.                                                  Page 1 of 22

11/01/2018 10:30 AM PST

**(B) "Borrower"** is    **ERICA RUIZ AND MANUEL VILLANUEVA, TENANTS IN
COMMON.**

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate
corporation that is acting solely as a nominee for Lender and Lender's successors and
assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized
and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026,
Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville,
IL 61834. The MERS telephone number is (888) 679-MERS.
**(D) "Lender"** is    **American Neighborhood Mortgage Acceptance Company
LLC..**

Lender is   **a Limited Liability Company,**                      organized and existing
under the laws of   **Delaware.**
Lender's address is   **700 East Gate Drive, Suite 400, Mt. Laurel, NJ 08054.**

**(E) "Note"** means the promissory note signed by Borrower and dated
**November 2, 2018.**          The Note states that Borrower owes Lender   **TWO
HUNDRED FIFTEEN THOUSAND FIVE HUNDRED TWENTY THREE AND NO/100\***
**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** Dollars (U.S. **$215,523.00**       )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and
to pay the debt in full not later than   **December 1, 2048.**
**(F) "Property"** means the property that is described below under the heading "Transfer
of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Planned Unit Development Rider
☐ Other(s) [specify]

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)                  Initials: _ERC_ . _MV_ 
Ellie Mae, Inc.                                 Page 2 of 22

11/01/2018 10:30 AM PST

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3039 1/01 (rev. 3/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)   Initials: _____
Ellie Mae, Inc.   Page 3 of 22

11/01/2018 10:30 AM PST

covenants and agreements under this Security Instrument and the Note. For this pur-
pose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee
for Lender and Lender's successors and assigns) and to the successors and assigns of
MERS, with power of sale, the following described property located in the
**County**                     of **Bucks**
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]:
**See Attached Legal Description**
**APN #:**

which currently has the address of    **512 Jefferson Avenue, Bristol,**

[Street] [City]

Pennsylvania  **19007**            ("Property Address"):
           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property,
and all easements, appurtenances, and fixtures now or hereafter a part of the property.
All replacements and additions shall also be covered by this Security Instrument. All of
the foregoing is referred to in this Security Instrument as the "Property." Borrower under-
stands and agrees that MERS holds only legal title to the interests granted by Borrower
in this Security Instrument, but, if necessary to comply with law or custom, MERS (as
nominee for Lender and Lender's successors and assigns) has the right: to exercise any
or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing
and canceling this Security Instrument.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)             Initials: _____
Ellie Mae, Inc.                           Page 4 of 22

11/01/2018 10:30 AM PST

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)    Initials: _____  MV
Ellie Mae, Inc.    Page 5 of 22

11/01/2018 10:30 AM PST

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)   Initials: ___ . ___
Ellie Mae, Inc.   Page 6 of 22

11/01/2018 10:30 AM PST

or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a short-age of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)    Initials: _____ MV
Ellie Mae, Inc.                                          Page 7 of 22

11/01/2018 10:30 AM PST

secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

   5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)                                   Initials:
Ellie Mae, Inc.                                        Page 8 of 22

11/01/2018 10:30 AM PST

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**PENNSYLVANIA**–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**   Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)   Initials: _____
Ellie Mae, Inc.                              Page 9 of 22

11/01/2018 10:30 AM PST



**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 8/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)    Initials: _____ · MV
Ellie Mae, Inc.                                Page 10 of 22

11/01/2018 10:30 AM PST

Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)                              Initials: _____ MV
Ellie Mae, Inc.                                      Page 11 of 22

11/01/2018 10:30 AM PST

Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3039 1/01 (rev. 3/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)                              Initials: _____ .M\J
Ellie Mae, Inc.                                          Page 12 of 22


11/01/2018 10:30 AM PST

Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercis-ing any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instru-ment. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attor-neys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3039 1/01 (rev. 3/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)   Initials: _____ MV
Ellie Mae, Inc.                               Page 13 of 22

11/01/2018 10:30 AM PST

If the Loan is subject to a law which sets maximum loan charges, and that law is
finally interpreted so that the interest or other loan charges collected or to be collected
in connection with the Loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit;
and (b) any sums already collected from Borrower which exceeded permitted limits will be
refunded to Borrower. Lender may choose to make this refund by reducing the principal
owed under the Note or by making a direct payment to Borrower. If a refund reduces
principal, the reduction will be treated as a partial prepayment with no changes in the
due date or in the monthly payment amount unless the Note holder agrees in writing to
those changes. Borrower's acceptance of any such refund made by direct payment to
Borrower will constitute a waiver of any right of action Borrower might have arising out
of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security
Instrument must be in writing. Any notice to Borrower in connection with this Security
Instrument shall be deemed to have been given to Borrower when mailed by first class
mail or when actually delivered to Borrower's notice address if sent by other means.
Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law
expressly requires otherwise. The notice address shall be the Property Address unless
Borrower has designated a substitute notice address by notice to Lender. Borrower shall
promptly notify Lender of Borrower's change of address. If Lender specifies a procedure
for reporting Borrower's change of address, then Borrower shall only report a change
of address through that specified procedure. There may be only one designated notice
address under this Security Instrument at any one time. Any notice to Lender shall be
given by delivering it or by mailing it by first class mail to Lender's address stated herein
unless Lender has designated another address by notice to Borrower. Any notice in con-
nection with this Security Instrument shall not be deemed to have been given to Lender
until actually received by Lender. If any notice required by this Security Instrument is
also required under Applicable Law, the Applicable Law requirement will satisfy the cor-
responding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument
shall be governed by federal law and the law of the jurisdiction in which the Property is
located. All rights and obligations contained in this Security Instrument are subject to
any requirements and limitations of Applicable Law. Applicable Law might explicitly or
implicitly allow the parties to agree by contract or it might be silent, but such silence shall
not be construed as a prohibition against agreement by contract. In the event that any
provision or clause of this Security Instrument or the Note conflicts with Applicable Law,
such conflict shall not affect other provisions of this Security Instrument or the Note which
can be given effect without the conflicting provision.



11/01/2018 10:30 AM PST

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such

**PENNSYLVANIA**–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)    Initials: _____ . MW
Ellie Mae, Inc.    Page 15 of 22

11/01/2018 10:30 AM PST

reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                         Page 16 of 22                         Initials: _____ MV

11/01/2018 10:30 AM PST



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but

**PENNSYLVANIA**–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.    Page 17 of 22    Initials: ZC · MV

11/01/2018 10:30 AM PST

his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)                Initials: _____ ·MV
Ellie Mae, Inc.                                      Page 18 of 22

11/01/2018 10:30 AM PST

appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq. ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.**

**25. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)                              Initials:  MV
Ellie Mae, Inc.                                        Page 19 of 22

11/01/2018 10:30 AM PST



execution, extension of time, exemption from attachment, levy and sale, and home-stead exemption.

**27. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**28. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**29. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) permit the collection and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;

(h) pay the fees required by Section 13 of this Security Instrument;

(i) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(j) pay any collection expenses under Section 24 of this Security Instrument; and

(k) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 17 and 24 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3039 1/01 (rev. 9/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1) Initials: _____
Ellie Mae, Inc. Page 20 of 22

11/01/2018 10:30 AM PST

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____     11/2/18   **(Seal)**
**ERICA RUIZ**                                     **DATE**

_____     11/2/18   **(Seal)**
**MANUEL VILLANUEVA**                          **DATE**

**State of PENNSYLVANIA**
**County of BUCKS**

This record was acknowledged before me on this, the 2nd day of NOVEMBER, 2018, by **ERICA RUIZ AND MANUEL VILLANUEVA.**

_____
**Signature of Notarial Officer**
**(STAMP)**

> COMMONWEALTH OF PENNSYLVANIA
> NOTARIAL SEAL
> PATRICIA SHPRINTZ
> Notary Public
> NEWTOWN TWP, BUCKS COUNTY
> My Commission Expires Jun 20, 2019

**Title of Officer** _Settlement Officer_

**My commission expires** _6/20/2019_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)        **Initials:** ____
Ellie Mae, Inc.                      **Page 21 of 22**

11/01/2018 10:30 AM PST

Certificate of Residence

I, _____ Patricia Shenote _____, do hereby certify
that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this ___2ND___ day of _November_ 2018

_____
Agent of Mortgage

PENNSYLVANIA–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)                        **Initials:** _____
Ellie Mae, Inc.                          Page 22 of 22

11/01/2018 10:30 AM PST



| ▮▮▮▮ *rst American Title* | Commitment for Title Insurance |
|---|---|
| | ISSUED BY |
| | **First American Title Insurance Company** |
| # Exhibit A | |

**ALL THAT CERTAIN** messuage and lot of land, Situate in the 5th Ward in Bristol Borough, County of Bucks, Commonwealth of Pennsylvania, bounded and described as follows:

**BEGINNING** at a point on the Southwest side of Jefferson Avenue at a corner of land formerly of Sarah A. Kemble, later of William F. and Annie L. Riley now of Angelo Salustio and at a distance of One hundred and six and one tenth feet from the Northwest side of Pear Street, thence along said land late of said Kemble now of Salustio and at right angles with said Jefferson Avenue, One hundred and ten feet more or less to the side of an alley, thence Northwestwardly along the side of said alley and parallel to said Jefferson Avenue Nine and five tenths feet to the line of land of the Philadelphia and Trenton Railroad; thence Northeastwardly along said Railroad's land Twenty and two tenths feet to a corner of land late of William C. Pierce, now of Estate of William Clardy and about to be conveyed to John H. Keen et ux., thence along said land at right angles with said Jefferson Avenue and passing through the middle of the partition between the house on this and that on the adjoining lot, Northeastwardly Ninety two and six tenths feet to the line of Jefferson Avenue aforesaid, and thence Southeastwardly along the line of said Jefferson Avenue aforesaid, Seventeen and four tenths feet to the place of beginning.

**BEING** known as 512 Jefferson Avenue.

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
                               BRISTOL BOR
CERTIFIED 06/28/2021 BY TF
```

Prepared by and Return to:
Carly Rowell
MidFirst Bank
Attn: Documentation
999 NW Grand Boulevard, Suite 100
Oklahoma City, OK 73118

MERS Phone: ▮▮▮▮▮▮▮▮▮▮
Pin ID Number ▮▮▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for American Neighborhood Mortgage Acceptance Company LLC., its successors and assigns,** 1901 E. Voorhees Street, Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026, (hereinafter called the "Assignor"), does hereby grant, convey, assign, transfer and set over to **MidFirst Bank, A Federally Chartered Savings Association,** 999 NW Grand Blvd., Suite 100 Oklahoma City, OK 73118, (hereinafter called the "Assignee"), its successors and assigns, all of the Assignor's rights, title and interest in and to:

The Mortgage dated **11/02/2018,** executed by **Erica Ruiz and Manuel Villanueva, tenants in common,** to **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for American Neighborhood Mortgage Acceptance Company LLC., its successors and assigns,** recorded on **11/07/2018, as Instrument No. 2018061379,** in the Office of the Recorder, **Bucks** County, State of **Pennsylvania,** and covers the following real property and all improvements:

Original Principal Amount of Mortgage: **$215,523.00**
Property Address: **512 Jefferson Avenue, Bristol, PA 19007**
Legal Description: **See Attached for Legal Description.**

In Witness Whereof, the undersigned corporation has caused this instrument to be executed **25TH** day of ___JUNE___, **2021.**

**Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for American Neighborhood Mortgage Acceptance Company LLC., its successors and assigns**

_Sudha Reddy_
**Sudha Reddy** **Vice President**

STATE OF OKLAHOMA
COUNTY OF OKLAHOMA

On this 25th day of June _____, 2021, before me, a Notary Public, in and for said county, personally appeared **Sudha Reddy**, to me personally known, who being by me duly sworn did say that he/she is the **Vice President of Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for American Neighborhood Mortgage Acceptance Company LLC., its successors and assigns,** and that the within instrument was signed on behalf of said corporation by authority of its Board of Directors, and that they acknowledged the execution of said instrument to be the voluntary act and deed of said corporation, executed for the uses and purposes set forth.

In testimony whereof, I have hereunto set my hand and official seal this 25th day of June _____, 2021.

_____
**Tasha Wambold**                    Notary Public
My Commission Expires:          01/03/2025

I do hereby certify that the address of the assignee is:
MidFirst Bank, 999 NW Grand Blvd., Suite 100
Oklahoma City, OK 73118

_____
Nancy Lentz

### EXHIBIT "A" LEGAL DESCRIPTION

**ALL THAT CERTAIN** messuage and lot of land, Situate in the 5th Ward in Bristol Borough, County of Bucks, Commonwealth of Pennsylvania, bounded and described as follows:

**BEGINNING** at a point on the Southwest side of Jefferson Avenue at a corner of land formerly of Sarah A. Kemble, later of William F. and Annie L. Riley now of Angelo Salustio and at a distance of One hundred and six and one tenth feet from the Northwest side of Pear Street, thence along said land late of said Kemble now of Salustio and at right angles with said Jefferson Avenue, One hundred and ten feet more or less to the side of an alley, thence Northwestwardly along the side of said alley and parallel to said Jefferson Avenue Nine and five tenths feet to the line of land of the Philadelphia and Trenton Railroad; thence Northeastwardly along said Railroad's land Twenty and two tenths feet to a corner of land late of William C. Pierce, now of Estate of William Clardy and about to be conveyed to John H. Keen et ux., thence along said land at right angles with said Jefferson Avenue and passing through the middle of the partition between the house on this and that on the adjoining lot. Northeastwardly Ninety two and six tenths feet to the line of Jefferson Avenue aforesaid, and thence Southeastwardly along the line of said Jefferson Avenue aforesaid, Seventeen and four tenths feet to the place of beginning.

**BEING** known as 512 Jefferson Avenue.

**BUCKS COUNTY RECORDER OF DEEDS**
55 East Court Street
Doylestown, Pennsylvania  18901
(215) 348-6209

Recorded On 6/29/2021 At 10:24:15 AM                    * Total Pages - 4
* Instrument Type - MORTGAGE ASSIGNMENT
  Invoice Number -                    User -
* Mortgagor - AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC
* Mortgagee - MIDFIRST BANK
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
  RECORDING FEES              $71.75
  TOTAL PAID                  $71.75

Bucks County UPI Certification
On June 28, 2021 By TF

This is a certification page

**DO NOT DETACH**

This page is now part
of this legal document.

RETURN DOCUMENT TO:
MIDFIRST BANK - MM DOC
501 NW GRAND BLVD
OKLAHOMA CITY, OK 73118-6037

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office

Robin M. Robinson
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.